IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MOLLY ABRAHAM,

    Plaintiff,

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
*et al.*,

    Defendants.

Case No. 15-cv-1116-pp

**DECISION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (DKT. NO. 18)**

This case is before the court on the defendants' partial motion to dismiss the plaintiff's second amended complaint. Dkt. No. 18. For the reasons explained in this order, the court will grant in part the defendants' motion.

**I.    BACKGROUND**

The plaintiff's case arises out of her termination from employment with the University of Wisconsin-Milwaukee ("UWM") and the circumstances leading up to UWM's decision to lay her off. After the plaintiff filed her original complaint and first amended complaint, the defendants moved to dismiss the plaintiff's claims under the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), Title IX of the Education Amendments Act, and certain of the plaintiff's Title VII claims. Dkt. No. 9. The plaintiff moved to stay briefing on that motion so that she could file a second amended complaint, dkt. no. 13; the defendants did not object to

1

that motion. The court granted the plaintiff's motion to stay (text-only order dated January 26, 2016), and she filed her second amended complaint on April 15, 2016, dkt. no. 16.

On May 16, 2016, the defendants filed an answer to the second amended complaint, along with a partial motion to dismiss. Dkt. No. 18. By agreement between the parties, the scope of the defendants' motion has been reduced considerably. After the defendants filed their partial motion to dismiss, the plaintiff agreed to dismiss certain of her claims, and did not respond to the defendants' motion to dismiss her claims under the ADA and the Rehabilitation Act. Dkt. No. 20, at 1-2; Dkt. No. 22, at 1. On July 19, 2016, the court heard oral arguments on the defendants' motion. Dkt. No. 23. At that time, the plaintiff agreed that the claims set forth on pages six and seven of the defendants' reply brief accurately stated the claims that the parties agreed could proceed.[1] Dkt. No. 23.

As of the hearing date, the only claims in the defendants' motion that remained for the court to decide were the plaintiff's claims under the FMLA against defendants Kuiper, Weslow, Bradbury, Venugopalan and Britz in their individual capacities. Dkt. No. 20, at 2; Dkt. No. 22 at 1-2. During the hearing, counsel for the defendants argued, and the plaintiff's counsel agreed, that the complaint did not state a claim under the FMLA against defendants Britz and

---

[1] The parties agreed that the plaintiff may proceed on her claims against (1) the Board of Regents under Title VII for sex discrimination and retaliation, the Equal Protection Act, and the Rehabilitation Act, (2) defendant Kuiper in his official capacity under the Americans With Disabilities Act; and (3) defendants Weslow, Bradbury, Venugopalan, and Britz in their official capacities under Section 1983. Dkt. No. 22, at 6-7.

2

Venugopalan, further narrowing the scope of the defendants' motion to the FMLA claims asserted against defendants Kuiper, Bradbury and Weslow. The court then heard arguments regarding whether the complaint stated a claim under the FMLA against those three defendants. At the conclusion of the arguments, the plaintiff's counsel requested leave to file a post-hearing letter brief addressing the plaintiff's FMLA claim against defendant Weslow. As the court instructed, the parties each have filed their post-hearing letter briefs, dkt. nos. 24, 25, and the motion is ripe for decision. Because the defendants' motion now applies only to the plaintiff's FMLA claims against defendants Kuiper, Bradbury and Weslow, the court will discuss only those allegations.

## II. DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss brought under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." Iqbal, 556 U.S. at 678. In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010)).

The defendants contend that the plaintiff has failed to plead sufficient facts to state an FMLA interference claim against defendants Kuiper, Bradbury and Weslow. To state an FMLA interference claim, a plaintiff must show: (1) that "she was eligible for FMLA protection," (2) that "her employer was covered by the FMLA," (3) that "she was entitled to FMLA leave," (4) that "she provided sufficient notice of her intent to take leave," and (5) that "her employer denied her benefits to which she was entitled." Smith v. Hope School, 560 F.3d 694, 699 (7th Cir. 2009). The defendants also argue that the plaintiff has failed to plead sufficient facts to state an FMLA retaliation claim against those three defendants. A plaintiff asserting a retaliation claim under the FMLA may proceed under the direct or indirect method of proof. Curtis v. Costco Wholesale Corp., 807 F.3d 215, 219 (7th Cir. 2015). Under the direct method, the plaintiff must establish that (1) she engaged in a protected activity; (2) her employer took an adverse action against her; and (3) there is a causal connection between her protected activity and her employer's adverse employment action. Cracco v. Vitran Express, Inc., 559 F.3d 625, 633 (7th Cir. 2009). Under the indirect method, the plaintiff must demonstrate that: "(1)

4

[s]he engaged in statutorily protected activity; (2) [s]he met [her] employer's legitimate expectations; (3) [s]he suffered an adverse employment action; and (4) [s]he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Id. at 634-35.

Defendants Kuiper, Bradbury and Weslow each work in UWM's Human Resources Department. During the time relevant to this case, Weslow was the Assistant Vice Chancellor of UWM's HR department, Bradbury was the Employee Relations Coordinator for UWM, and Kuiper was UWM's Disabilities in Employment Coordinator. Dkt. No. 16 at ¶¶6-7, 10. The second amended complaint alleges that the plaintiff requested FMLA leave on September 19, 2013, due to her mental health conditions. Id. at ¶31. She alleges that she could have returned to work on or about October 9, 2013 if UWM had provided "reasonable accommodations for her disabilities," including allowing the plaintiff to work from home up to twenty hours per week and the ability to work those hours "at any time of the night or day." Id. at ¶32. The plaintiff alleged that Kuiper refused her request for those accommodations on November 21, 2013. Instead, on November 25, 2013, Kuiper offered her the ability to work reduced hours in the office, not at home. Id. at ¶33. Then, on November 27, 2013, the plaintiff "requested that she be able to flex her hours between 6:00 a.m. and 6:00 p.m., and that she be allowed to work on campus at a location other than her assigned workspace." Id. at ¶34. On January 14, 2014, "UWM" refused to grant the accommodations the plaintiff had requested on November 27, 2013. Id. at ¶37.

5

The plaintiff alleges that, "on or about December 13, 2013, [she] returned to work, as her protected FMLA leave had ended." Id. at ¶38. In May 2014, "UWM notified [the plaintiff] that she was 'at risk' for layoff because UWM had decided to discontinue using the computer application 'myDev,' the development and maintenance of which was [the plaintiff's] primary work responsibility." Id. at ¶39. She was laid off on June 28, 2014. Id. at ¶40. She alleges that defendants Kuiper, Bradbury and Weslow interfered with her rights under the FMLA and retaliated against her for exercising those rights by "refusing to allow her to return to work after her leave, refusing to provide her with accommodations for her disabilities, and failing to offer or suggest alternative accommodations for her disabilities . . . ." Id. at ¶48.

In her post-hearing letter brief, the plaintiff argued that the plaintiff's FMLA claims "should be analyzed under a theory of intersectionality." Dkt. No. 24 at 1. She contends that UWM's failure to provide her with reasonable accommodations for her disabilities so that she could return to work without using her full twelve-week FMLA leave period "could have been done in retaliation for her internal complaint" of sex discrimination. Id. at 2. She further submits that UWM could have decided "to eliminate the myDev application at UWM, and thus eliminate Ms. Abraham's position," because the plaintiff has disabilities and "needed FMLA leave, because she actually took such leave, or a combination of other factors." Id. She contends that she "did not plead her proof, as that is not required at the pleading stage." Id.

6

A.  Interference Claim

The allegations in the second amended complaint fail to state facts that support the fifth element in an FMLA interference claim—that the plaintiff's employer denied her benefits to which she was entitled. The plaintiff used all of her FMLA leave; she indicates as much in paragraph 38 of the second amended complaint ("In the meantime, on or about December 13, 2013, Abraham returned to work, as her protected FMLA leave had ended."), as well as on page 2 of her post-hearing letter brief (arguing that the defendants' failure to accommodate her disabilities would have allowed her to return to work "without taking her full twelve weeks of leave"). The plaintiff's claim that the three individual defendants interfered with her right to take the FMLA leave to which she was entitled is in direct conflict with her factual admissions that she took all of the leave to which she was entitled. See, e.g., Bunch v. County of Lake, No. 15-C-6603, 2016 WL 1011513, *5 (N.D. Ill. Mar. 16, 2016) (citing Chicago Police Sergeants Ass'n v. City of Chicago, No. 08-cv-4214, 2011 WL 2637203, at *7 (N.D. Ill. July 6, 2011) (a plaintiff may not plead "conclusory facts that are inconsistent with detailed factual allegations in the body of a complaint or inconsistent with facts shown by supporting exhibits attached to a complaint")).

It appears that what the plaintiff really is attempting to argue is that she had a right *not* to be forced to use up all of the leave to which she was entitled, and that the defendants interfered with that right. She cites to no case law supporting the existence of such a right, and that argument really appears to

7

relate more to her accommodations claim under the ADA. The court concludes that the plaintiff has not stated an interference claim against the three defendants under consideration.

  B. <u>The Retaliation Claim</u>

  Similarly, the plaintiff has not pleaded factual allegations that plausibly suggest that defendants Kuiper, Bradbury or Weslow retaliated against her for exercising her rights under the FMLA. The second amended complaint alleges in its conclusion that the three defendants refused to allow her to return to work after her leave, refused to provide her with accommodations, and failed to offer or suggest accommodations. Dkt. No. 16 at ¶48. In terms of specifics, however, the complaint alleges only that after she filed her internal sex discrimination complaint on April 12, 2012, "Wesley" and "Bradley"—the court assumes these to be defendants Weslow and Bradbury—demonstrated hostility toward the plaintiff by "shunning her" and "whispering as she walked past her co-workers, as though they were keeping secrets from her." <u>Id.</u> at ¶23. There is no other mention of Weslow and Bradbury—or anyone with names similar to "Weslow" and "Bradbury"—in the factual section of the second amended complaint. If the court can tie these allegations to any claim in the complaint, they appear to be tied to her Title VII sex discrimination claim.

  As to defendant Kuiper, the second amended complaint states that on November 21, 2013, he refused to accommodate the plaintiff's disability by allowing her to "work from home with hours initially limited to 20 hours per week, with the work to be performed at any time of the night or day." <u>Id.</u> at

¶¶32, 33. It further alleges that four days later, on November 25, 2013, Kuiper "did offer Abraham reduced work hours, but still required her to return to the work environment which caused her mental health conditions in the first place." Id. at ¶33. In neither place does the plaintiff allege that Kuiper (or UWM) refused these accommodations in retaliation for the defendant exercising her FMLA rights. Nor does the complaint allege facts sufficient to create a presumption that any of the defendants discriminated against the plaintiff for exercising her FMLA rights. These bare-bones assertions do not "present[s] a story that holds together," showing the plaintiff has a "plausible" claim, as opposed to one that is "merely conceivable or speculative." Carlson, 758 F.3d at 826-27 (quoting Swanson v. Citibank, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010)). The plaintiff has failed to state a retaliation claim against any of the three defendants at issue.

    C.    The "Intersectionality" Argument

The plaintiff's post-hearing brief highlights both the speculative nature of her FMLA claims against defendants Weslow, Kuiper and Bradbury, and a muddling of the concept of "intersectional discrimination." The letter brief indicates that "the employer's failure to reasonably accommodate [the plaintiff's] disabilities such that she could return to work without taking her full twelve weeks of leave *could have been* done in retaliation for her internal complaint of discrimination on the basis of sex." Dkt. No. 24 at 2. She states that "the decision to eliminate the myDev application at UWM, and thus eliminate Ms. Abraham's position," *could well have been made either because*

9

*Ms. Abraham was a person with disabilities who needed FMLA leave, or because she actually took such leave, or a combination of other factors.*" Id. (emphasis added). Allegations of what "could have been" or "might have been" are exactly the kinds of speculative, conjectural allegations prohibited by Iqbal.

The plaintiff also appears to argue that because she took the FMLA leave to which she was entitled, and because she suffered sex discrimination under Title VII, disability discrimination under the ADA and equal protection violations, that somewhere in all of the activity that took place between April 12, 2012 (when she filed her first internal sex discrimination complaint) and June 28, 2014 (when she was laid off), somebody must have retaliated against her for using her FMLA leave. She argued at the hearing, and in her post-hearing brief, that this combination-of-harms approach constituted "intersectional discrimination." In support of that concept, she noted in her post-hearing brief that Title VII not only prohibits discrimination based solely on one protected class, but also prohibits discrimination that results from "the intersection of two or more protected bases (e.g., race and sex)." Dkt. No. 24 at 1 (citing the EEOC Compliance Manual, Ch. 15, at http://www.eeoc.gov/policy/docs/race-color/html).

The plaintiff's argument attempts to import the flexible pleading standard under Title VII into a general argument that a plaintiff needn't plead FMLA claims with specificity; there is no support for this theory. Title VII prohibits employers from discriminating against employees based on certain protected individual traits—race, color, religion, sex, or national origin. It also protects

10

individuals against discrimination based on the combination or "intersection" of two or more protected classifications, even in the absence of evidence showing the defendant discriminated solely on the basis of one protected classification. The EEOC Compliance Manual[2] states:

> Title VII prohibits discrimination not just because of one protected trait (e.g., race), but also because of the intersection of two or more protected bases (e.g., race and sex). For example, Title VII prohibits discrimination against African American women even if the employer does not discriminate against White women or African American men. Likewise, Title VII protects Asian American women from discrimination based on stereotypes and assumptions about them "even in the absence of discrimination against Asian American men or White women." The law also prohibits individuals from being subjected to discrimination because of the intersection of their race and a trait covered by another EEO statute – e.g., race and disability, or race and age.

Courts have explained that the "intersectional" discrimination theory applies to plaintiffs who have been discriminated against because of distinct stereotypes associated with persons belonging to two or more protected classes. E.g., Wis. Dept. of Workforce Dev., 690 F. Supp. 2d 765, 769-771 (E.D. Wis. 2010) ("It is sometimes mistakenly thought that the black male experience represents a mere racial variation on the white male experience and that black men suffer from discrimination only because they are black. Conceptualizing separate over-lapping black and male categories has sometimes interfered with the

---

[2] EEOC Compliance Manual, Section 15: Race and Color Discrimination, at https://www.eeoc.gov/policy/docs/race-color.html (Last visited Sept. 30, 2016).

recognition that certain distinctive features of being black *and* male serve as the target for discrimination").

In contrast, in order to plead a claim under the FMLA, a plaintiff must allege facts sufficient to state a claim for FMLA interference (by pleading that her employer was covered by the FMLA, that she was eligible for FMLA protection and FMLA leave, properly notified her employer that she intended to take FMLA leave, and that her employer denied her FMLA leave), or a claim for FMLA retaliation (by alleging a causal connection between the exercise of her FMLA rights and the adverse employment action). E.g., Smith, 560 F.3d at 699; Cracco, 559 F.3d at 633. The plaintiff argues that her employer might have eliminated the myDev program because she is "a person with disabilities who needed FMLA leave, or because she actually took such leave, or a combination of other factors." Dkt. No. 24 at 2. Unlike Title VII and the ADA, however, the FMLA does not protect individual traits such as race, sex, age, or disability, and the plaintiff has not pleaded that the defendants violated her FMLA rights because she belongs to two or more statutorily protected classes. Further, the court finds no support for her contention that the intersectional discrimination theory enables her to link her status as a person who invoked her FMLA rights with a statutorily protected class in order to state a claim for FMLA interference or retaliation. The court will grant the defendants' motion to dismiss the plaintiff's FMLA interference and retaliation claims against defendants Kuiper, Bradbury, and Weslow.

### III. CONCLUSION

For the reasons explained above, the court **ORDERS** as follows:

The court **GRANTS IN PART** the defendants' partial motion to dismiss (modified to challenge only the plaintiff's Family and Medical Leave Act claims against defendants Kuiper, Bradbury and Weslow, as confirmed at oral argument). Dkt. No. 18. The court **DISMISSES** the plaintiff's Family and Medical Leave Act claims in their entirety against defendants **Kuiper, Bradbury and Weslow**, and **DENIES AS MOOT** the remainder of the defendants' motion.

Pursuant to the parties' agreement, the court **DISMISSES** the following claims: (1) Violation of the 14th Amendment – against the Board of Regents; Americans with Disabilities Act – against defendant Kuiper in his individual capacity; (3) Rehabilitation Act – against defendants Weslow, Bradbury, Venugopalan, and Britz; (5) Title VII – against defendants Weslow, Bradbury, Venugopalan, and Britz; (6) Equal Pay Act – against defendants Weslow and Bradbury; and (7) Family and Medical Leave Act – against defendants Venugopalan and Britz.

The court **ORDERS** that the plaintiff **MAY PROCEED** against the defendants on the following claims pleaded in the second amended complaint: (1) Title VII Sex Discrimination – against the Board of Regents; (2) Title VII Retaliation – against the Board of Regents; (3) Equal Pay Act – against the Board of Regents; (4) Rehabilitation Act – against the Board of Regents; (5) Americans with Disabilities Act – against defendant Kuiper in his official

13

capacity; and (6) Violation of the 14th Amendment under 42 U.S.C. §1983 – against defendants Weslow, Bradbury, Venugopalan, and Britz.

The court **ORDERS** that if the defendant wishes to file an amended answer to the second amended complaint, it must do so no later than the end of the day on **January 13, 2017**. The court will schedule a Rule 16 conference after that date.

Dated in Milwaukee, Wisconsin this 19th day of December, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge